## MATTER OF NAGY

### In Deportation Proceedings

### A-14586364

### Decided by Board November 30, 1966

Application of respondent, a 21-year-old native and citizen of Hungary,· for withholding of her deportation pursuant to the provisions of section 243(h), Immigration and Nationality Act, as amended by P.L. 89-236, is denied since respondent's liability to prosecution under Hungarian law, upon return to that country, arising from her disregard of the limitation placed .on the duration of her travel abroad and from her objection to returning voluntarily to Hungary, does not, in itself, establish "persecution" within the contemplation of that section.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251]—Nonimmigrant (visitor)—remained longer.

The special inquiry officer, in a decision dated July 15, 1966, denied the respondent's application for adjustment of her status to that of a permanent resident; granted her the privilege of voluntary departure; provided for her deportation from the United States to Hungary, on the charge contained in the order to show cause, in the event of her failure to so depart; and denied her application for temporary withholding of deportation to Hungary. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a 21-year-old single female alien, a native and citizen of Hungary, who last entered the United States on or about December 1, 1964. She was then admitted as a nonimmigrant visitor for a period until September 15, 1965. On November 26, 1965, she was granted the privilege of voluntary departure in lieu of the institution of deportation proceedings, such departure to be effected on or before December 6, 1965. She has, however, remained in the United States since that date.

The foregoing establishes the respondent's deportability on the above-stated charge This was conceded in the course of the hearing before the special inquiry officer. It presents no problem here.

The special inquiry officer has already granted the respondent the privilege of voluntary departure. Suffice it to say, in this connection, that the record before us supports said official's action in this respect.

We find that the special inquiry officer has properly denied the respondent's application for adjustment of her status to that of a permanent resident pursuant to section 245 of the Immigration and. Nationality Act (8 U.S.C. 1255). In order for her to be eligible for the benefits of that section, she is required to establish that an immigrant visa is readily available to her. Also, under the appropriate provisions of 8 CFR 245.1 the respondent, who is presently employed as a "shampoo girl" and assisting a hairdresser, is not eligible for the benefits of said section of the statute unless she presents a certification issued by the Secretary of Labor under section 212(a)(14) of the Act, or unless she demonstrates that her occupation is included in the current list of categories of employment for which the Secretary of Labor has issued a blanket certification under that section.

It is established and uncontested that this respondent has failed to obtain the required labor clearance. The copy of a newspaper article concerning reported changes in the procedure for obtaining the necessary labor clearance and containing a purported list of occupations for which a labor clearance will not be required, does not mention the specific occupation presently being followed by this respondent; and the very nature of this document speaks for itself insofar as its evidentiary value is concerned.

We likewise find that the special inquiry officer has properly denied the respondent's request for temporary withholding of her deportation to Hungary. Our review of the record convinces us that she has not met her burden of establishing that she would be subjected to persecution because of race, religion or political opinion upon her return to Hungary (see 8 CFR 242.17(c)). We do not think that the judicial precedents cited by the respondent (*Sovich* v. *Esperdy*, 319 F.2d 21; and *Dunat* v. *Hurney*, 297 F.2d 744) call for a contrary conclusion.

The respondent first claimed that she was deprived of an opportunity to pursue further studies after completing high school, because she was considered a "class enemy" by the Hungarian authorities as a result of an uncle of hers having fled to the West. However, the record reflects that when she applied for a passport to

and from her objection to returning voluntarily to Hungary. As a result, of course, she may be subjected to more severe penalties under Hungarian law than would otherwise be the case. But aside from the matter of her unauthorized extension of her visit in the United States, none of the other circumstances relied on by the respondent appear persuasively pertinent to the point at issue here. They existed before her departure from Hungary and did not result in her persecution there or prevent her leaving that country. Her parents who still reside in Hungary and are employed there have not been persecuted.

In conclusion, if weight were given to the basic reason for this appeal it would, in effect, make it possible for every Hungarian visitor to the United States to create a basis for immunity to deportation merely by extending the period of stay beyond that usually involved in a visit. Without more, this does not suffice to support an application for this type of relief.

ORDER: It is ordered that the appeal be and the same is hereby dismissed.