# MATTER OF H-M- et al.

## In Deportation Proceedings

A-28746032
A-28746037
A-28746038

*Decided by Board August 11, 1993*

(1) Comparing *Acewicz v. United States INS*, 984 F.2d 1056 (9th Cir. 1993), with *Castillo-Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992), the Board concluded that it may take administrative notice of the change in conditions of a country in those cases arising within the jurisdiction of the United States Court of Appeals for the Ninth Circuit when an alien acknowledges this Board's authority to do so and discusses the changed circumstances on appeal.

(2) Where an asylum applicant focuses his application on past persecution, the requirement to show that there is little likelihood of future persecution can be satisfied by taking administrative notice of the change in circumstances in the country at issue.

(3) Where an asylum applicant violates currency laws which a government has a legitimate right to enforce, and he suffers harsh treatment as a result, the applicant must show that the government in question has punished him "on account of" his political opinion and not for the violation of the currency laws. *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), followed.

CHARGE:

Order: Act of 1952—Sec. 241(a)(2) [8 U.S.C. § 1251(a)(2)]—Entered without inspection (all respondents)

ON BEHALF OF RESPONDENTS: Thomas L. Hiester, Esquire
6767 Mission Street
Daly City, California 94014

BY: Milhollan, Chairman; Dunne, Morris, Vacca, and Heilman, Board Members

The respondents appeal the decision of the immigration judge, dated April 20, 1989, denying their applications for asylum under section 208(a) of the Immigration and Nationality Act, 8 U.S.C. § 1158(a) (1988), and withholding of deportation under section 243(h) of the Act, 8 U.S.C. § 1253(h) (1988). The immigration judge had found the respondents deportable as charged, but granted them the privilege of voluntary departure. The appeal will be dismissed.

The respondents, three family members, are natives and citizens of

683

Nicaragua who entered the United States without inspection on July 12, 1986. As a result, on December 21, 1988, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221) charging them with deportability for their entry without inspection.

At their deportation hearing, the respondents admitted the truth of the allegations contained in the Order to Show Cause and conceded their deportability as charged. The immigration judge noted that the respondents' deportability had been established by clear, unequivocal, and convincing evidence, as required. *See Woodby v. INS*, 385 U.S. 276 (1966); *see also* 8 C.F.R. § 242.14(a) (1993). The respondents did not raise any issues regarding their deportability on appeal; therefore, it is not an issue before us.

The immigration judge afforded the respondents an opportunity to apply for asylum, which was automatically considered as a request for withholding of deportation. The primary respondent filed a Request for Asylum in the United States (Form I-589), upon which the remaining two respondents, his children, also base their asylum claims.[1] The respondent wrote in his application that he feared that if returned to Nicaragua he would be killed or imprisoned based upon his political opinion. In addition to his asylum application, the respondent included a statement and three translations of articles from a Nicaraguan newspaper. In his statement, the respondent wrote that he had been working as a peddler in his country when, in July 1980, he was arrested by the Sandinista government for selling foreign currency. The three articles specifically mention the respondent in an arrest that occurred on December 22, 1980, for selling and trading gold without authorization from the Sandinista government. The third article, dated January 20, 1981, indicates that for his role, the respondent was sentenced to 15 months' confinement and the confiscation of his vehicles.

During the hearing concerning his asylum application, the respondent submitted his declaration and general background information. The general background information does not mention the respondent's name at all. In addition to his own testimony, the respondent offered the testimony of his son. The respondent bases his claim of asylum and withholding of deportation upon arrests or interrogations that occurred on July 12, 1980, and in November 1980, December 1985, and June 1986.

The record reflects that the respondent was first arrested in July

_____

[1] The references to the "primary respondent" or "respondent" are interchangeable and as used in the singular incorporate the applications for asylum and withholding of deportation from all the respondents.

1980. He indicated that he was working as an independent stockbroker and as a speculator. The respondent testified and wrote in his declaration that he was arrested for a violation of Nicaraguan currency laws. He was questioned by the authorities about his activities and they wanted to know how he was able to obtain so many dollars. The respondent conceded that there were laws regulating the transfer of currency in Nicaragua. He testified that he was subjected to harsh treatment, beaten, and threatened after his arrest. The respondent was held in jail for 12 days and then released. He admitted in his declaration that he was specifically informed that the buying and selling of foreign currency was against Nicaraguan law, and that if he violated it once more, he would go to jail again. One of the conditions of his release was to ask forgiveness for his crimes from the Nicaraguan people in a television broadcast.

Contrary to the admonitions that he received from the Sandinista government, the respondent continued to work as a speculator, transferring gold and other currency without the permission of the government. The respondent was again arrested in November 1980 for his actions. The authorities questioned the respondent, desiring to find out where he was getting gold, United States currency, and other metals and international currencies. The respondent stated that his spouse was questioned for an 8-hour period during this time frame.[2] As indicated by the news articles, the respondent was sentenced to 15 months' confinement. The respondent indicated that while serving his sentence, he was maltreated and harassed. Through the efforts of his attorney, however, the respondent obtained an early release from prison on November 26, 1981.

After his release, the respondent obtained employment with a construction company. He further refused to participate in any of the Sandinista Defense Committee ("CDS") activities. As a result of his refusal, the Sandinistas denied him a food ration card. The respondent indicated that he was forced to pay a higher price for food on the black market. In March 1982, the respondent turned to buying and selling merchandise on the black market. The respondent conceded in his declaration that he was buying and selling without a license or authority from the Ministry of Commerce.

The respondent's next arrest occurred on December 5, 1985. The respondent was taken for interrogation regarding a suitcase which allegedly contained money and items stolen from the Department of

---

[2]The respondent wrote in his declaration that his son was also "arrested" in December 1980. He was purportedly told that if he did not answer their questions, his son would be taken away. The respondent indicated that although he refused to answer their questions, his son was released that same day.

Interim Decision #3204

Security. The authorities believed that someone had stolen the items and then transferred them to another individual, who in turn was suspected of giving them to the respondent. The respondent was apparently detained while the investigation continued. On December 15, 1985, the respondent hired an attorney. On April 20, 1986, with the assistance of the attorney, the respondent was released based upon a lack of evidence implicating him in the alleged crime. After his release, the respondent was told that he would be watched, and if he committed an offense, he would be arrested.

On June 7, 1986, the respondent was arrested and his home was searched. The respondent was questioned as to why he desired to go to Mexico and why was he taking his two children. The respondent was then confined for 8 days while the authorities conducted an investigation. At the completion of the investigation, the respondent was released without being criminally charged. Shortly thereafter, he fled with his two children to the United States. He wrote in his asylum application that he left Nicaragua so that he would not have any further problems with the government and his children could avoid military service.

The immigration judge denied the respondents' applications for asylum and withholding of deportation which were based upon the primary respondent's claims of persecution. He concluded that the respondent had shown that he had been incarcerated on at least two occasions for the violation of Nicaraguan currency laws and regulations. He found that the respondent was ill-treated during his incarcerations, but that the record did not reflect that it was due to his political opinions. He determined that it was due instead to the general lack of due process and the prison conditions in Nicaragua. The immigration judge concluded that any past harm or fear of future harm was not based upon the respondent's political opinion or his religious beliefs;[3] rather any fear was due to the respondent's criminal activities. He denied both asylum and withholding of deportation to all the respondents on this basis. The immigration judge then determined that they did not demonstrate that they would merit asylum in the exercise of discretion even if otherwise eligible.

On appeal, the respondents first state in their Notice of Appeal (Form EOIR-26) that the immigration judge abused his discretion when he denied their applications for asylum and withholding of deportation. They claim that the immigration judge failed to consider

[3]The respondent mentions in several places that he was and is a member of the Jehovah's Church. However, he does not claim anywhere that he has suffered or currently fears any persecution on account of his religion. Therefore, it is not an issue before us.

686

that the loss of food and employment constituted persecution, citing *Kovac v. INS*, 407 F.2d 102 (9th Cir. 1969). In the appellate brief filed with this Board on May 11, 1990, the respondents state the following:

> In view of recent possible changes in Nicaragua, the argument here will be presented that in terms of *Chen*, which held as follows. Past persecution, as well as a well-founded fear of future persecution, creates statutory eligibility for asylum. Past persecution also creates a rebuttable presumption of future persecution. The likelihood of future persecution is relevant to the issue of whether asylum should be granted in the exercise of discretion. In those situations where a persecutory government has been removed from power, the BIA may reopen the record or may take administrative notice of changed circumstances.

The respondents therefore argue that given the changes that have occurred in Nicaragua, the primary respondent has suffered past persecution which warrants asylum for humanitarian reasons.[4] Furthermore, the respondents assert that they have demonstrated that they merit asylum in the exercise of discretion. Lastly, the respondents believe that they met the more stringent standard required for withholding of deportation. We disagree and will dismiss the appeal.

Aliens who seek asylum and withholding of deportation bear the burden of establishing eligibility under sections 208(a) and 243(h) of the Act, respectively. *See* 8 C.F.R. §§ 208.5, 242.17(c) (1990); *see also Matter of Dass*, 20 I&N Dec. 120 (BIA 1989). To establish eligibility for withholding of deportation pursuant to section 243(h) of the Act, an alien's facts must show a clear probability of persecution in the country designated for deportation on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407 (1984). This clear probability standard requires a showing that it is more likely than not that an alien would be subject to persecution if returned to the country from which he seeks withholding of deportation. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 430 (1987); *see also Kapcia v. INS*, 944 F.2d 702 (10th Cir. 1991); *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989).

Pursuant to section 208(a) of the Act, the Attorney General may, in the exercise of her discretion, grant asylum to an alien who qualifies as a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A) (1988). That section defines a "refugee" as

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of

---

[4] Without explicitly stating so, the respondents switched the emphasis of their arguments in their brief from the arguments raised in the Notice of Appeal. In the Notice of Appeal, the respondents focused on the fear of future harm, whereas in their brief, based upon the changed conditions, they emphasize past persecution.

persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

Section 101(a)(42)(A) of the Act.

In *INS v. Cardoza-Fonseca, supra,* the Supreme Court held that the burden of proof required to establish eligibility for asylum is lower than that required for withholding of deportation. An applicant for asylum has established that his fear is "well-founded" if he shows that a reasonable person in his circumstances would fear persecution. *See Matter of Mogharrabi,* 19 I&N Dec. 439 (BIA 1987). Further, asylum, unlike withholding of deportation, may be denied in the exercise of discretion to an alien who establishes statutory eligibility for that relief. *See INS v. Cardoza-Fonseca, supra; Matter of Mogharrabi, supra.*

In light of the Supreme Court's decision, this Board held that an applicant for asylum has established a well-founded fear of persecution if he shows that a reasonable person in his circumstances would fear persecution. *Matter of Mogharrabi, supra.* A reasonable person may well fear persecution even where its likelihood is significantly less than clearly probable. *Id.* However, there must be a reasonable possibility of actually suffering such persecution. The applicant must show that his fear of persecution is both subjectively genuine and objectively reasonable. *Blanco-Comarribas v. INS,* 830 F.2d 1039 (9th Cir. 1987); *Sanchez-Trujillo v. INS,* 801 F.2d 1571 (9th Cir. 1986). The objective component requires a showing by credible, direct, and specific evidence in the record of facts that would support a reasonable fear that the applicant faces persecution. *Diaz-Escobar v. INS,* 782 F.2d 1488 (9th Cir. 1986). In view of this standard of proof, there must be a showing that (1) the alien possesses a belief or characteristic a persecutor seeks to overcome in others by means of punishment of some sort; (2) the persecutor is aware or could become aware that the alien possesses this belief or characteristic; (3) the persecutor has the capability of punishing the alien; and (4) the persecutor has the inclination to punish the alien. *Matter of Mogharrabi, supra.*

At the outset, exercising our authority to conduct an independent review of the record, we analyze whether the respondent has shown a well-founded fear of future persecution if returned to Nicaragua.[5] We conduct the determination in light of the respondents' acknowledgement in their brief of this Board's ability to take administrative notice, and their explicit recognition that there has been a change in

---

[5] The immigration judge determined that the respondent, if statutorily eligible, did not show that he would merit asylum in the exercise of discretion. Since we conclude that the respondent is not statutorily eligible for asylum, we do not reach the issue of discretion.

government in Nicaragua. We must address whether recognizing that conditions have changed in Nicaragua would be contrary to precedent in the United States Court of Appeals for the Ninth Circuit, the jurisdiction in which this case arises. *See Gomez-Vigil v. INS*, 990 F.2d 1111 (9th Cir. 1993) (per curiam); *Acewicz v. United States INS*, 984 F.2d 1056 (9th Cir. 1993); *Castillo-Villagra v. INS*, 972 F.2d 1017 (9th Cir. 1992). We conclude that since the respondent specifically agreed that this Board could take administrative notice of changed circumstances in Nicaragua, the present case is more analogous to *Acewicz v. United States INS, supra*, than to *Castillo-Villagra v. INS, supra.*

In *Castillo-Villagra v. INS, supra*, a case involving an asylum applicant from Nicaragua, the Ninth Circuit noted that the hearings were conducted in December 1987 and February 1988. It pointed out that the immigration judge's decision was rendered in February 1988, and briefing before this Board was completed in October 1989, all prior to the election in April 1990 which resulted in favor of Violeta Chamorro and her democratic coalition, UNO, and in defeat for the Sandinistas. *Id.* at 1021. According to *Acewicz v. United States INS, supra*, at 1060, central to the court's conclusion in *Castillo-Villagra* was the fact that "aliens were precluded therefore from presenting evidence to rebut the noticed facts and from disputing whether notice should be taken." The Ninth Circuit was concerned because "notice, and perhaps an opportunity to present contrary evidence and to dispute whether notice should be taken, was required as to whether the Sandinistas were truly without power and whether the applicants could have a well-founded fear of persecution despite the surprising election results." *Id.*

The court concluded that the Board could take administrative notice in *Acewicz*, a case involving Polish asylum applicants, because the respondents had "ample opportunity" to introduce evidence "on the effect of the change of government." *Id.* at 1061. We do not believe that the Ninth Circuit fashioned a rule that we could take administrative notice for Polish asylum applicants and not Nicaraguan applicants. Rather, it requires that the record must reflect that the respondent was aware of the opportunity to respond to the change in circumstances. We must ensure that a respondent has had an opportunity, either before the immigration judge or us, to introduce evidence on the effect of a change in government. *Id.* Furthermore, we must demonstrate that the noticed facts are not "'blindly appl[ied]' to 'automatically deny every asylum application submitted by'" an applicant. *Id.* (*quoting Berroteran-Melendez v. INS*, 955 F.2d 1251, 1257 (9th Cir. 1992)).

We conclude that the respondents' awareness in their brief of our specific ability to take administrative notice and their awareness of the

changed circumstances in Nicaragua presented them with the required opportunity to introduce and present evidence on the effect of a change in government. The present case is more aligned with the alien's case in *Acewicz v. United States INS, supra,* where the respondent did have an opportunity to respond to the change in government. The respondents in the present case were fully cognizant of the change in government and were aware of our ability to take administrative notice. The respondents, aware that circumstances in Nicaragua have changed, have shifted the focus of their asylum claims to emphasize that they have suffered past persecution such that a presumption arises which must be rebutted by a showing that there is little likelihood of future persecution. In so doing, however, the respondents do not present any reason to fear the new government. The rebuttable presumption that there is little likelihood of future persecution is also met by the noticed facts. *Matter of Chen, supra,* at 4.

As specifically mentioned by the respondents and as we have done in our precedent, we take administrative notice of the change in government in Nicaragua that occurred in 1990. *See Matter of R-R-,* 20 I&N Dec. 547 (BIA 1992). Effective April 25, 1990, a new coalition government, formed by parties in opposition to the Sandinistas, UNO, succeeded the former government of the Sandinista party following national elections and the inauguration of Violeta Chamorro as the new president. We take notice that the new president of Nicaragua thereafter announced a general amnesty covering the hostilities between the former Contra resistance and the Nicaraguan Government, and an end to military conscription. *See Matter of R-R-, supra,* at 551. Although the Sandinistas continue to operate the military and police with substantial autonomy (albeit in much smaller numbers), and there continues to be some civil strife and turmoil in Nicaragua, the elected government has continued in power for over 3 years. *Id.* Given that the Sandinista party no longer governs Nicaragua, under the present circumstances we do not find that the record before the immigration judge or that presently before us supports a finding that the primary respondent has a well-founded fear of persecution. The respondent has not shown that, given the change of government, he possesses a well-founded fear from the changed government.

Independently and separately from our findings above, we conclude that the respondent has not shown that any fear of future harm or past persecution would be based upon a ground enumerated in the statute. The respondent's engaging in the speculation in foreign currency and sales on the black market which caused his arrests and incarceration in 1980 do not constitute activity based on his political opinion. While the respondent writes in his brief that his activity was "quasi-legal," he

690

acknowledged during his testimony under oath that he had violated the currency laws of Nicaragua. The respondent's harsh treatment while incarcerated was not on account of his political opinion; rather, it was for his violation of the currency laws. The respondent did not show that he was treated more harshly for his crimes because of his political opinion than others who may have committed the same crime. *See INS v. Elias-Zacarias*, 502 U.S. 478 (1992). The record reflects instead that the respondent simply committed a crime and became a victim of the harsh prison system in Nicaragua.

Furthermore, the respondent's arrest in 1985 was based upon the government's belief that he was part of a conspiracy to possess illegal weapons. He was arrested and detained for 4 months. The respondent wrote in the addendum to his asylum application that he sought the assistance of an attorney and successfully obtained a release from prison. He pointed out that the others were actually convicted, sentenced, and punished for the crime that was committed. The respondent has not shown that the investigation was anything other than an investigation for illegal weapons, particularly when he was released and others were found guilty and punished. The respondent has failed to show that the arrest and detention were on account of his political opinion. We conclude that any claim of asylum based upon fear of future persecution, or past persecution fails. We also conclude that the past harm suffered by the respondent was not on account of a political opinion. Even if we were to assume for argument's sake that it was on account of a political opinion, it is not of the severe nature that we found in *Matter of Chen, supra*, to warrant asylum for humanitarian reasons.

Lastly, the respondent raises a claim that he has suffered persecution for loss of his ration card and the deprivation of employment. Not only has the respondent failed to show that these actions were based upon his political opinion, they do not constitute persecution. *See Saballo-Cortez v. INS*, 761 F.2d 1259 (9th Cir. 1985). Consequently, for all of the reasons stated above, we conclude that the respondents have failed to show their statutory eligibility for asylum based upon the primary respondent's application.

Inasmuch as the respondents have failed to satisfy the lower burden of proof required for asylum, it follows that they have also failed to satisfy the clear probability standard of eligibility required for withholding of deportation. *See Matter of Mogharrabi, supra*. The evidence does not establish that it is more likely than not that the respondents would be subject to persecution on account of one of the five grounds specified in section 243(h) of the Act. *See INS v. Stevic, supra*. We therefore conclude that the respondents are statutorily

ineligible for asylum and for withholding of deportation. Accordingly, the appeal will be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the immigration judge's order and in accordance with our decision in *Matter of Chouliaris,* 16 I&N Dec. 168 (BIA 1977), the respondents are permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event of failure so to depart, the respondents shall be deported as provided in the immigration judge's order.