**Serine MIRZOYAN, Petitioner,**

v.

**Alberto GONZALES, United States Attorney General, Respondent.**

**Docket No. 05–0866–AG NAC.**

United States Court of Appeals, Second Circuit.

Calendar: Feb. 27, 2006.

Decided: July 20, 2006.

Warren N. Stone, Brooklyn, NY, for Petitioner.

Rodger A. Heaton, United States Attorney for the Central District of Illinois, Patrick D. Hansen, Assistant United States Attorney, Springfield, IL, for Respondent.

Before STRAUB, SOTOMAYOR, and KATZMANN, Circuit Judges.

PER CURIAM.

In this case, the petitioner's applications for asylum and withholding of removal were denied, in part, because Immigration Judge Barbara A. Nelson ("the IJ") concluded that the economic mistreatment the petitioner claims to have suffered in her native country does not constitute "persecution" under 8 U.S.C. § 1101(a)(42)(A). The Board of Immigration Appeals ("BIA") has not clearly identified the statutory construction of the word "persecution" it applies when assessing claims of economic persecution. We remand so that

the BIA may address this important question.

## BACKGROUND

Serine Mirzoyan petitions for review of a February 4, 2005, decision of the BIA affirming the decision of the IJ denying Mirzoyan's applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").[1]

Mirzoyan is an ethnic Armenian and a citizen of the republic of Georgia. In June 2002, she entered the United States on a nonimmigrant visa, which she overstayed. In January 2003, she filed an application for asylum, withholding of removal, and CAT relief. Mirzoyan claimed to fear persecution in Georgia on the basis of her Armenian ethnicity.[2] At a hearing before the IJ, Mirzoyan offered the testimony of an expert witness concerning the treatment of Armenians in Georgia. In her own testimony, Mirzoyan recounted various incidents of mistreatment that she had suffered in Georgia, including having twice been physically attacked by pairs of men who made derogatory references to her ethnicity. Her family had also suffered repeated racially motivated attacks.

Mirzoyan also testified that she had been denied the opportunity to earn a livelihood because of her ethnicity. Having received an unfairly low score on the entrance exam for the university to which she applied, she was told to apply elsewhere because the school was "too prestigious for Armenians." Mirzoyan found admission at a less prestigious school, where she studied sewing and design. When she applied for jobs in her profession, however, she was repeatedly turned down because of her ethnicity. Unable to find work in her profession, Mirzoyan was forced to take a job as a courier at a furniture plant, but anti-Armenian sentiment rose in Georgia, and eventually she was fired even from this job because of discrimination against ethnic Armenians. After losing her job at the plant, Mirzoyan worked from home, making clothes and selling them to wholesalers.

On October 9, 2003, the IJ found that "both the respondent and her expert witness offered credible testimony," but denied Mirzoyan's applications and ordered her removed to Georgia. The IJ concluded that the harm Mirzoyan had suffered did not constitute persecution, because "discrimination such as mistreatment by school authorities, having trouble finding or maintaining employment, or being harassed does not rise to the level of persecution." The IJ did not discuss or identify the standard she applied in concluding that Mirzoyan's treatment did not constitute past persecution, except by citing two BIA cases, which, as discussed below, appear to refer to conflicting standards for economic persecution claims. The IJ also found that the background materials and expert testimony submitted did not show a danger of persecution should Mirzoyan return to Georgia.

On February 4, 2005, BIA Board Member Roger Pauley summarily affirmed, stating that the BIA "agree[d] that the respondent failed to meet her burden of establishing past persecution or a well-founded fear of persecution on account of

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Apr. 18, 1988, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85. *See* 8 C.F.R. § 1208.16 (regulations implementing the CAT).

2. Mirzoyan also claimed to fear persecution on the basis of religion and political opinion, but does not press these claims on this petition for review.

one of the statutorily protected grounds, or that it is more likely than not that she will be persecuted or subjected to torture upon her return to Georgia." Mirzoyan filed a timely petition for review.

## DISCUSSION

■ When the BIA issues a short opinion adopting an IJ's decision, we review the two decisions together, including "the portions [of the IJ's decision] not explicitly discussed by the BIA." *Yun–Zui Guan v. Gonzales,* 432 F.3d 391, 394 (2d Cir.2005) (per curiam).

To be eligible for asylum, *see* 8 U.S.C. § 1158(b)(1)(A), an applicant must be a "refugee" under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101(a)(42)(A). The INA defines a refugee as a person who is unwilling or unable to return to his or her country of origin "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A).

■ There are three ways to establish refugee status. First, an applicant may demonstrate that he or she has suffered past persecution, in which case a presumption arises that he or she has a well-founded fear of future persecution. *See Paul v. Gonzales,* 444 F.3d 148, 154 (2d Cir.2006). Second, the applicant may establish a well-founded fear of persecution independent of any past persecution. *Id.* To qualify for withholding of removal, an applicant must meet the higher burden of showing that his or her "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); *see Paul,* 444 F.3d at 154–55. Third, in certain rare cases, an applicant may have suffered such severe past persecution as to constitute a "compelling reason[ ] for being unwilling or unable to return to the country." 8 C.F.R. § 208.13(b)(1)(iii)(A); *see also Matter of Chen,* 20 I. & N. Dec. 16 (BIA 1989).

■ Mirzoyan challenges the IJ's conclusion that she did not suffer past persecution. This conclusion rests solely on legal grounds because the IJ found that Mirzoyan's testimony was credible, i.e., that Mirzoyan had in fact experienced the mistreatment she described. This factual finding, like all factual findings, is entitled to deference. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary...."); *Kyaw Zwar Tun v. U.S. INS,* 445 F.3d 554, 563 (2d Cir.2006).

■ The IJ determined, however, that the mistreatment Mirzoyan suffered was not "persecution," i.e., that the facts did not meet the legal definition of persecution in the INA. This is a mixed question of law and fact, which we review *de novo. See Khouzam v. Ashcroft,* 361 F.3d 161, 165 (2d Cir.2004) (noting that although findings of fact are reviewed under the substantial evidence standard, "[t]he BIA's application of law to undisputed facts is reviewed *de novo* "); *see, e.g., Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003) (noting that the application of inappropriately stringent standards in the context of adverse credibility determinations is reviewed *de novo* ).

■ If the INA unambiguously explained what the word "persecution" means in the context of economic persecution claims such as the one before us, we would review *de novo* the BIA's interpretation of that term. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If the intent of Con-

gress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."); *Khouzam,* 361 F.3d at 164–65 ("If Congress clearly established the standard, then we review the BIA's interpretation of that standard *de novo.").* But the INA does not address the specific statutory interpretation question presented in this case—what level of treatment constitutes "persecution" in the context of economic mistreatment claims such as Mirzoyan's—and so we are obligated to defer to any agency's construction of the term "persecution" insofar as it is reasonable. *See Chevron,* 467 U.S. at 843, 104 S.Ct. 2778 ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."); *Khouzam,* 361 F.3d at 164 ("[I]f the statute is silent or ambiguous with respect to the precise standard, we must defer to the Attorney General's construction of it, so long as that construction is reasonable.").

██ "We defer to the BIA's reasonable constructions of the immigration laws," *Kyaw Zwar Tun,* 445 F.3d at 562, but we do not apply *Chevron* deference to statutory construction by an IJ. *Shi Liang Lin v. U.S. Dep't of Justice,* 416 F.3d 184, 191 (2d Cir.2005). To give deference to a BIA construction, however, we must first be able to determine what construction the BIA has adopted. Where we are unable to make this determination, we may remand to the BIA for clarification. *See Gui Ci Pan v. U.S. Att'y Gen.,* 449 F.3d 408 (2d Cir.2006) (remanding to the BIA for clarification of whether an unmarried partner of a refugee can also qualify as a refugee under 8 U.S.C. § 1101(a)(42)(B)—which provides that any person who is victimized by or engages in "other resistance to a coercive population control program" is deemed to have a well-founded fear—or under any other statutory provision); *Ucelo–Gomez v. Gonzales,* 448 F.3d 180 (2d Cir.2006) (remanding so that the BIA could determine in the first instance whether "affluent Guatemalans" constitute a "particular social group" under § 1101(a)(42)(A)); *Shi Liang Lin,* 416 F.3d at 192 (remanding a series of cases to the BIA so that the BIA could "more precisely explain its rationale" behind its construction of § 1101(a)(42) as that statute relates to unmarried partners).

██ The BIA decision in this case did not indicate what standard it applied in determining that Mirzoyan's treatment did not constitute economic persecution. It cited a short list of authorities discussing general standards governing applications for asylum, withholding of removal, and CAT relief, such as *INS v. Elias–Zacarias,* 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992), *INS v. Cardoza–Fonseca,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), *INS v. Stevic,* 467 U.S. 407, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984), *Matter of Y—L—, A—G—, & R—S—R—,* 23 I. & N. Dec. 270 (2002), and *Matter of S—V—,* 22 I. & N. Dec. 1306 (BIA 2000). None of the cited cases, however, adopted or even discussed a standard governing claims of economic persecution.[3] The BIA decision thus gave no indication as to what standard was applied to Mirzoyan's claim of economic persecution.

Had the BIA in past cases stated a standard for economic persecution, we might reasonably assume that it applied that standard in the present case. But as

---

**3.** The last of these cases, *Matter of S—V—,* deals with motions to reopen, although Mir- zoyan had made no such motion.

far as we can determine from a review of BIA decisions, the BIA has not applied a consistent standard. Several relatively recent BIA decisions refer to the standard first identified in *Kovac v. INS*, 407 F.2d 102 (9th Cir.1969), which defines economic persecution as the "deliberate imposition of substantial economic disadvantage." *Id.* at 107. For example, in *Matter of Barrera*, 19 I. & N. Dec. 837 (BIA 1989), in holding that Mariel Cubans did not qualify for asylum, the BIA noted that the petitioners had not claimed economic persecution, and it cited *Kovac.* *Id.* at 847 ("There are no allegations that the returned Marielitos who are not considered a threat to Cuban society have been denied employment, education, housing, permission to travel, or other benefits of this sort. *See Kovac v. INS*, 407 F.2d 102 (9th Cir. 1969)."). In *Matter of H—M—*, 20 I. & N. Dec. 683 (BIA 1993), the BIA considered a claim of economic persecution, noting that the respondents had cited *Kovac.* *Id.* at 686–87. In holding that the respondents' loss of a ration card and a job did not constitute economic persecution,[4] the BIA did not explicitly adopt a standard for economic persecution claims, but it seemed to assume that the respondents had invoked the correct standard by citing *Kovac.* *Id.* at 691.

BIA decisions from the 1960s invoked a different standard derived from a Third Circuit opinion, *Dunat v. Hurney*, 297 F.2d 744 (3d Cir.1962), that interpreted the INA's then-existing requirement (since expunged) of "physical persecution" to include "the denial of an opportunity to earn a livelihood." *Id.* at 746; *see, e.g., Matter of Nagy*, 11 I. & N. Dec. 888, 890 (Nov. 30, 1966) ("[The] record does not support a claim of complete deprivation of economic opportunity within the scope of the *Dunat*

case...."); *Matter of Bufalino*, 11 I. & N. Dec. 351, 361 (Sept. 30, 1965) (noting that "[i]t has ... been held that economic proscription so severe as to deprive a person of all means of earning a living may amount to physical persecution" and citing *Dunat); Matter of Vardjan*, 10 I. & N. Dec. 567, 575 (Jun. 3, 1964) (citing *Dunat* for the proposition that "subsistence at a low level does not meet the statutory standard for physical persecution.... Only total proscription of employment for such reasons suffices").

The *Dunat* standard reappeared in one relatively recent case, *Matter of D—L— & A—M—*, 20 I. & N. Dec. 409 (BIA 1991). In that case, the BIA rejected a claim of economic persecution "based on the refusal of ... officials to allow [the applicant] to return to his job" because the applicant "failed to show that the [government] had placed him in a situation so severe as to deprive him of a livelihood." *Id.* at 414. The BIA cited *Dunat* in support. *Id.* The return of the *Dunat* standard may be an aberration, given that the BIA referenced the *Kovac* standard in cases decided both before and after *Matter of D—L— & A—M—*.

The BIA referenced yet another standard in *Matter of Acosta*, 19 I. & N. Dec. 211 (BIA 1985). In that case, which did not involve a claim of economic persecution, the BIA noted in passing that prior to Congress's 1980 amendments to the INA, the word persecution had been interpreted to apply to "economic deprivation or restrictions so severe that they constitute a threat to an individual's life or freedom." *Id.* at 222. The BIA held that the 1980 amendments had not altered the requirement that "that harm or suffering must be inflicted upon an individual in order to punish him for possessing a belief or char-

4. In so holding, *Matter of H—M—* cited only *Saballo-Cortez v. INS*, 761 F.2d 1259 (9th Cir.1985), a case that did not discuss economic persecution. 20 I. & N. Dec. at 691.

acteristic a persecutor seeks to overcome," *id.* at 223, but it never discussed whether the pre–1980 standard for economic persecution should similarly continue to govern. During the twenty years since *Acosta*, the BIA has not cited it in any case concerning economic persecution. *See Zhen Hua Li v. Att'y Gen. of the U.S.*, 400 F.3d 157, 167 (3d Cir.2005).

█ In short, given the various standards referred to by the BIA, we are unable to determine whether the BIA has adopted the "substantial economic disadvantage" standard of *Kovac*, the *Dunat* standard (based upon a no-longer-extant version of the INA), the "threat to . . . life or freedom" standard mentioned in passing in *Acosta*, or possibly some other standard.[5]

Even if an IJ's decision, when adopted by the BIA, could in some cases give us a basis to discern the standard applied by the BIA, *but see Shi Liang Lin*, 416 F.3d at 191 (holding that IJ decisions do not receive *Chevron* deference), the IJ's decision in this case does not do so. The IJ's decision, which was affirmed (although not explicitly adopted) by the BIA, did not explain what standard it applied. The IJ cited two BIA cases that briefly discuss claims of economic persecution. The first was *Matter of H—M—*, which, as discussed above, referenced the *Kovac* standard. *See* 20 I. & N. Dec. at 686–87. The second case cited by the IJ, *Matter of D— L— & A—M—*, apparently applied the

*Dunat* standard based on an outdated version of the INA. Because the two cases cited by the IJ themselves reference different standards, we can neither identify the standard applied by the IJ in this case nor infer that the BIA intended to adopt whatever standard the IJ applied.

The outcome of Mirzoyan's case may depend on the standard applied. Mirzoyan suffered the denial of admission to a more prestigious college, the inability to find a job in her profession (which resulted in her acceptance of a job as an unskilled courier), and eventually discharge from her job, which required her to work from home. In effect, she alleges that she experienced discrimination that interfered with her ability to earn a livelihood, which might constitute a "substantial economic disadvantage," but her treatment is unlikely to constitute a "threat to [her] life or freedom." In other words, Mirzoyan likely could not prevail under the standard referenced in *Acosta*, or under the similarly stringent *Dunat* standard of *Matter of D— L— & A—M—*, but might prevail under the *Kovac* standard. Neither the IJ nor the BIA explained what standard they applied. Accordingly, we remand to the BIA for clarification.

Because we remand this case for clarification of the standard governing economic persecution claims, we do not reach Mirzoyan's other claims relating to asylum and withholding of removal. We note, however, that Mirzoyan failed to raise in

---

**5.** In *Guan Shan Liao v. U.S. Dep't of Justice*, 293 F.3d 61 (2d Cir.2002), we addressed "for purposes of completeness" an economic persecution claim that the petitioner had apparently waived. *Id.* at 69–70. We applied the "deliberate imposition of substantial economic disadvantage" standard. *Id.* at 70. We need not reach the question of whether *Guan Shan Liao's* statements were necessary to its result, and therefore binding on us, or whether they were merely dicta and therefore non-

binding, *cf. Paul*, 444 F.3d at 155 (treating as dicta earlier statements by this Court addressing "for purposes of completeness" a claim that had apparently been waived), because a finding by this Court that a statutory interpretation is permissible does not bind the agency to adopt that interpretation. *See Nat'l Cable Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 125 S.Ct. 2688, 2702, 162 L.Ed.2d 820 (2005).

her brief any arguments challenging the IJ's denial of her CAT claims, and therefore we deem those claims to have been waived. *See Yueqing Zhang v. Gonzales,* 426 F.3d 540, 545 n. 7 (2d Cir.2005).

## CONCLUSION

For the foregoing reasons, the petition for review is GRANTED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion, and the pending motion of a stay of removal is DENIED as moot. Because petitions for review involving claims of economic persecution are common in this Circuit, we ask the BIA to act as expeditiously as possible.