# MATTER OF D-L- & A-M-

## In Exclusion Proceedings

A-29595639
A-29595640

*Decided by Board October 16, 1991*

Applicants for admission to the United States, who were not traveling in transit without visa status, are not excludable under section 212(a)(19) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(19) (1988), where the applicants did not present or intend to present fraudulent visas or travel documents or documents containing willful misrepresentations to an authorized official of the United States Government at the time of their attempted entry. *Matter of Shirdel,* 19 I&N Dec. 33 (BIA 1984), distinguished.

EXCLUDABLE: Act of 1952—Sec. 212(a)(19) [8 U.S.C. § 1182(a)(19)]—Fraud or willful misrepresentation of a material fact (both applicants)

Sec. 212(a)(20) [8 U.S.C. § 1182(a)(20)]—No valid immigrant visa (both applicants)

ON BEHALF OF APPLICANTS:
Pro se[1]

ON BEHALF OF SERVICE:
Hans Burgos
General Attorney

BY: Milhollan, Chairman; Dunne, Morris, and Vacca, Board Members. Concurring Opinion: Heilman, Board Member.

In a decision dated March 23, 1990, an immigration judge found the applicants excludable as alleged, denied their applications for asylum and withholding of exclusion and deportation under sections 208(a) and 243(h) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(a) and 1253(h) (1988), and ordered them excluded and deported from the United States. The applicants have appealed from

---

[1] The applicants' counsel filed a motion to withdraw as attorney of record. The motion indicates that the applicants no longer wish counsel to represent them. The applicants' last known address is indicated on the certificate of service accompanying the motion. We find the motion to conform to our requirements set forth in *Matter of Rosales,* 19 I&N Dec. 655 (BIA 1988). Accordingly, the motion to withdraw is granted.

that decision. The appeal will be sustained in part and dismissed in part.

The applicants, husband and wife, are natives and citizens of Cuba who arrived in the United States on April 11, 1989, by commercial flight from Spain. At their March 23, 1990, exclusion hearing, the applicants conceded excludability under section 212(a)(20) of the Act, 8 U.S.C. § 1182(a)(20) (1988), but contested excludability under section 212(a)(19) of the Act. The male applicant testified that, upon their arrival in Miami, he and his wife surrendered to immigration officials the photo-switched Spanish passport they had used to board the airplane in Spain, identified themselves as Cuban citizens, presented their Cuban birth certificates, and requested asylum in the United States. The immigration judge found the applicants excludable under both grounds. Although he found that the applicants had not attempted to use the fraudulent document to enter, the immigration judge based his finding of excludability under section 212(a)(19) of the Act on the fact that the applicants used the fraudulent Spanish passport in order to arrive in the United States and request asylum. Following the finding of excludability, the applicants applied for asylum and withholding of deportation. The female applicant's asylum application is based on the asylum claim of her husband.

Regarding his request for asylum and withholding of deportation, the male applicant stated in his Request for Asylum in the United States (Form I-589) that he was arrested by the Cuban police in 1963 for his activities with the National Liberation Movement ("NLM"), an organization that intended to overthrow the Castro government. The male applicant reported in his application that he held the rank of captain in the NLM and that he was arrested, along with 12,000 others, for conspiring to prepare a landing site where weapons were to be dropped for use in an armed uprising against the Castro regime.

At his exclusion hearing, the male applicant testified that, following his arrest, he was detained for 3 months without a trial and was tortured and raped while in jail. He stated that his father, arrested the same day for his own involvement with the NLM, was convicted of conspiring against the powers of the state and was sentenced to 5 years' imprisonment. He testified that his father was mistreated in prison and died 7 months after his release. The male applicant asserted that, following his arrest, the authorities forbade him from working at his former job because he was a counterrevolutionary. He related that he had no alternative but to harvest rice and tobacco on a small parcel of land which he owned. He explained that he was arrested on other occasions, questioned, and released. The most recent arrest, and the only arrest described specifically by the male applicant at his hearing, occurred in 1980, during the Mariel boatlift, when he was held for 1

day and threatened that he would be tried for the same crimes as his father.

The male applicant testified that he, his wife, and their son left Cuba for Spain in 1983, at which time he was forced to give all of his property to the Cuban Government in order to leave. On cross-examination, he explained that he and his family lived in Spain for 6 years, although he had been attempting to obtain a visa to the United States since 1963; that he and his family were temporary residents in Spain; that the temporary residency was renewable annually; that he and his son sold cigars on the street while his wife worked as a cleaning woman; and that if he had obtained a work contract, his family's temporary residency in Spain could then have been made permanent.

The immigration judge denied the male applicant's request for asylum and withholding of deportation on statutory grounds and went on to find that he also did not merit asylum as a matter of discretion.

On appeal, the applicants argue that the immigration judge erred in finding them excludable under section 212(a)(19) of the Act based solely on the manner in which they arrived in the United States. The applicants also contend that the immigration judge erred in denying them asylum and withholding of deportation. They assert in this regard that the immigration judge failed to give proper weight to the male applicant's testimony regarding his torture, rape, and abuse during his imprisonment by the Castro regime in 1963, as well as the subsequent arrests and detentions that continued until he left Cuba.

We will first examine the issue of the applicants' excludability under section 212(a)(19) of the Act. The burden in exclusion proceedings is upon an applicant for admission to establish that he is not inadmissible under any provision of the Immigration and Nationality Act. *See* section 291 of the Act, 8 U.S.C. § 1361 (1988); *Matter of De La Nues*, 18 I&N Dec. 140 (BIA 1981); *Matter of Healy and Goodchild*, 17 I&N Dec. 22 (BIA 1979). Section 212(a)(19) of the Act renders excludable from admission

> [a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure, or has sought to procure or has procured, a visa, other documentation, or entry into the United States or other benefit provided under this Act.

It is well established that fraud or willful misrepresentation of a material fact in the procurement or attempted procurement of a visa, or other documentation, must be made to an authorized official of the United States Government in order for excludability under section 212(a)(19) of the Act to be found. *See Matter of Shirdel*, 19 I&N Dec. 33 (BIA 1984); *Matter of L-L-*, 9 I&N Dec. 324 (BIA 1961).

The case at hand, however, concerns the issue of when an alien is excludable for fraud or willful misrepresentation of a material fact in

seeking to procure entry into the United States. In *Matter of Shirdel, supra,* we found Afghan nationals arriving in the United States with fraudulent Turkish passports in order to submit applications for asylum to be excludable under section 212(a)(19) of the Act for seeking entry into the United States by fraud or material misrepresentation.[2] However, the aliens in *Shirdel* were traveling under a special status known as transit without visa ("TRWOV").[3] In *Shirdel,* we did not reach the issue of when aliens other than those in the TRWOV status will be found excludable for seeking entry by fraud or misrepresentation.[4] We now hold that, outside of the TRWOV context addressed in *Shirdel,* an alien is not excludable under section 212(a)(19) of the Act for seeking entry by fraud or willful misrepresentation of a material fact where there is no evidence that the alien presented or intended to present fraudulent documents or documents containing material misrepresentations to an authorized official of the United States Government in an attempt to enter on those documents.

In the instant case, the evidence shows that the applicants purchased a fraudulent Spanish passport bearing a nonimmigrant visa for the United States. Upon arrival in Miami, the applicants surrendered the false document to United States immigration officials, immediate-

---

[2] The aliens in *Matter of Shirdel* did not attempt to use the fraudulent documents to enter. We based our finding of fraud in *Shirdel* on the fact that the aliens' use of the fraudulent passports in order to avail themselves of the privilege of obtaining transit without visa status was an integral step in their scheme to eventually enter as refugees and therefore constituted "seeking to enter by fraud" under section 212(a)(19) of the Act.

[3] TRWOV aliens are admitted under agreements with the transportation lines, which guarantee their immediate and continuous passage to a foreign country, and do not encounter United States officials until they arrive at a port of entry. *See generally Matter of PAA "Flight 896/10,"* 8 I&N Dec. 498 (BIA 1959). The TRWOV device is designed to facilitate international travel by permitting aliens traveling between foreign countries to make a stopover in the United States without presenting a passport or visa. *See* section 212(d)(4)(C) of the Act. To avail himself of the TRWOV privilege, an alien must establish that he is admissible under the immigration laws; that he has confirmed and onward reservations to at least the next country beyond the United States; and that he will continue his journey and depart from this country within 8 hours after his arrival or on the next available transport. *See* 8 C.F.R. § 214.2(c) (1991).

[4] We note that at the time *Shirdel* was decided, section 212(a)(19) of the Act rendered excludable from admission

[a]ny alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.

We find that the present version of section 212(a)(19) of the Act does not change the analysis or outcome of *Matter of L-L-, supra,* or *Matter of Shirdel, supra.* The underlying intent of section 212(a)(19) continues to be to exclude those attempting to commit fraud or material misrepresentations in the presence of authorized officials of the United States Government.

ly revealed their true identity, and asked to apply for asylum. This action does not provide a basis for excludability under section 212(a)(19) of the Act, as it does not involve fraud or misrepresentation to an authorized official of the United States Government. Therefore, we find that the applicants have shown they are not excludable under section 212(a)(19) of the Act.

Next, we turn to the application for asylum and withholding of deportation. To be eligible for withholding of deportation, an alien must show a clear probability of persecution in the country designated for deportation, on account of race, religion, nationality, membership in a particular social group, or political opinion. *INS v. Stevic*, 467 U.S. 407 (1984). This means that the alien must establish that it is more likely than not that he would be subject to persecution for one of the grounds specified. *Id.*

An applicant for asylum must establish that he is unwilling or unable to return to his country because of persecution or a "well-founded fear" of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. A "well-founded fear" of persecution may be established upon a lesser showing than the clear probability of persecution required for withholding of deportation under section 243(h) of the Act. An applicant for asylum has established a "well-founded fear" of persecution if he shows that a reasonable person in his circumstances would fear persecution. *See* sections 101(a)(42)(A), 208(a) of the Act, 8 U.S.C. §§ 1101(a)(42)(A), 1158(a) (1988); *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987); *Guevara-Flores v. INS*, 786 F.2d 1242 (5th Cir. 1986), *cert. denied*, 480 U.S. 930 (1987); *Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

Where an alien has shown that he has been persecuted in the past on account of race, religion, nationality, membership in a particular social group, or political opinion, the likelihood of present persecution then becomes relevant as to the exercise of discretion, and asylum may be denied as a matter of discretion if there is little likelihood of present persecution. *Matter of Chen*, 20 I&N Dec. 16 (BIA 1989).

In this case, we find that the male applicant has failed to establish a well-founded fear of detention or harm upon returning to Cuba on account of his political opinion or other statutory grounds. First, the male applicant has not shown a well-founded fear of persecution on the basis of his arrest and 1-day detention in 1980. He has not shown that the circumstances of that brief detention and interrogation constituted persecution. *See Zalega v. INS*, 916 F.2d 1257 (7th Cir. 1990). In addition, he continued to live and work in Cuba without incident for 3 years following his 1980 detention.

Second, the male applicant has not established a well-founded fear of persecution based on his detention in 1963. As he was released after

3 months and continued to live and work in Cuba for 20 years thereafter, he has not shown that the Cuban Government maintains an interest in him now for his activities in 1963. *Matter of Acosta*, 19 I&N Dec. 211 (BIA 1985), *modified on other grounds, Matter of Mogharrabi, supra.*

Third, the male applicant has not established a well-founded fear of persecution based on the refusal of Cuban Government officials to allow him to return to his job following his release from detention. The male applicant admitted he was able to make a living raising tobacco and rice on land that he owned. He therefore failed to show that the Cuban Government had placed him in a situation so severe as to deprive him of a livelihood. *See Dunat v. Hurney*, 297 F.2d 744, 753 (3d Cir. 1961), *on reargument* (1962).

Finally, we need not reach the issue of whether the male applicant's 3-month detention in 1963 or the restriction on his employment following his release constituted past persecution because, even if it did, we find that asylum should be denied in the exercise of discretion. *See Matter of Pula*, 19 I&N Dec. 467 (BIA 1987). There is no evidence that the applicants have any family ties to the United States. Moreover, as noted above, there is little likelihood that the Cuban Government would take action against the male applicant now for the activities which led to his 1963 detention. *Matter of Chen, supra.* Further, the applicants lived and worked free from harm in Spain for 6 years as lawful temporary residents with the option to become permanent residents of that country. Consequently, we find that the applicants were firmly resettled in Spain. *See Matter of Soleimani*, 20 I&N Dec. 99 (BIA 1989). The applicants demonstrated no compelling countervailing equities which would warrant a discretionary grant of asylum despite their firm resettlement in a third country. Therefore, we will deny their asylum claim as a matter of discretion. *Matter of Soleimani, supra; Matter of Pula, supra.*

Because the male applicant has failed to satisfy the lower burden of proof required for asylum, it follows that he has also failed to satisfy the clear probability standard of eligibility required for withholding of deportation. *See, e.g., INS v. Cardoza-Fonseca, supra; Matter of Mogharrabi, supra.*

Inasmuch as the applicants have shown they are not excludable under section 212(a)(19) of the Act, the appeal of the immigration judge's finding of excludability under section 212(a)(19) of the Act will be sustained. Since the applicants have not met their burden of proof on their asylum and withholding of deportation claims, the appeal of the denial of those claims will be dismissed.

**ORDER:** The appeal is sustained and the decision of the

immigration judge is reversed insofar as it finds the applicants excludable under section 212(a)(19) of the Immigration and Nationality Act.

**FURTHER ORDER:** The appeal is dismissed and the decision of the immigration judge is affirmed insofar as it denies the applicants' applications for asylum and withholding of exclusion and deportation.

*CONCURRING OPINION:* Michael J. Heilman, Board Member

I respectfully concur.

While I agree with the majority's ultimate conclusion regarding the claim of persecution, I believe that the majority's analysis is ambiguous and may be misleading.

The applicant claims that he was persecuted and faces future persecution on account of his participation in Cuba in the "National Liberation Movement." Evidence that this organization existed is totally lacking from this record, and the immigration judge and the majority have accepted the applicant's testimony relating to the existence and activities of this organization at face value. According to the applicant's testimony, he was arrested in 1963, along with his father, the two of them being members of the "Organized Revolutionary Movement." They were plotting to overthrow the Cuban Government in an armed uprising. The applicant testified that he was a "captain" in this organization. Following his arrest, he was allegedly held for 3 months without trial, during which time he was supposedly tortured and raped. He was subsequently released and told he could not work at his former employment. Allegedly, his father was also arrested at the same time, but was sentenced to 5 years' imprisonment. The father died shortly after his release from prison. After the applicant was released, he returned to a family farm, where he raised various crops for sale. He was employed in this manner on his farm until 1983, when he left Cuba to live in Spain with his wife and children.

The only other information about the applicant and the activities of the "National Liberation Movement," or "Organized Revolutionary Movement," as it is variously named in the record, is that found in the asylum application itself. There, in an attached supplementary statement by the applicant, the "National Liberation Movement" is described as an armed organization. It supposedly had a "national coordinator" and apparently had supporters all over Cuba. According to the supplementary statement, the arrest of the national coordinator had "far-reaching consequences as approximately 12,000 men were arrested for alleged participation in the conspiracy." If what the

415

applicant states about this organization and the arrests is true, one would think that some independent evidence of the existence of this organization and the events described would have been provided.

This Board held in *Matter of Dass*, 20 I&N Dec. 120 (BIA 1989), that an applicant for asylum has the burden of proof in establishing eligibility for asylum. As we stated there, we did not agree that "the introduction of supporting evidence is purely an option with an asylum applicant in the ordinary case. Rather, the general rule is that such evidence should be presented where available." *Id.* at 7. We observed in this context that the more sweeping the claim of persecution, the more likely it was that corroborative evidence would be available. Surely, the arrest of 12,000 persons in one fell swoop in 1963 falls within the category of verifiable events, as does the existence of the group whose activities form the basis for his claim. The lack of corroboration strikes me as a fundamental evidentiary failing.

But even if one assumes for the sake of argument that the events related by the applicant did take place, it is not clear to me that a prima facie claim of persecution has been made. The applicant described his participation in a conspiracy to overthrow the Government of Cuba by force, some 2 years after the spectacular failure of the Bay of Pigs. It is generally understood that a conspiracy to overthrow a government by force is a criminal act. The record is completely silent on the nature and purpose of the organization in which the applicant participated.

It has been this Board's position that a "legitimate and internationally recognized government" has the right to "defend itself from an armed rebellion." *Matter of Izatula*, 20 I&N Dec. 149, at 153 (BIA 1990). We recognized an exception where citizens do not "have an opportunity to seek change in the political structure of the government via peaceful processes." *Id.* In that case, we considered and found persuasive evidence that citizens had "'neither the right nor the ability peacefully to change their government,'" *id.* (quoting Committees on Foreign Relations and Foreign Affairs, 101st Cong., 1st Sess., *Country Reports on Human Rights Practices for 1988* 1273 (Joint Comm. Print 1989)), and so concluded that the respondent had established that he was at risk of being punished for "political activities" even if those activities included armed rebellion. *Id.*

It thus appears to me that an applicant for asylum who wishes to benefit from the exception outlined in *Matter of Izatula, supra,* must establish at a minimum two factors. The first thing he must do is establish by persuasive evidence the character of the government he was in rebellion against and, more particularly, the fact that citizens have no right to peacefully change their government. Secondly, once this is done, the applicant must establish the nature of his opposition