**Cesar LIMA–GONZALEZ, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States; Kenneth J. Elwood, District Director, Immigration and Naturalization Service; James W. Ziglar, Commissioner, Immigration and Naturalization Service, Respondents.**

No. 02–4390.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) June 16, 2004.

Decided Aug. 2, 2004.

Andre Michniak, Michniak, Bezpalko & Associates, Philadelphia, PA, for Petitioner.

Emily A. Radford, Papu Sandhu, William C. Minick, Aviva L. Poczter, Terri Leon–Benner, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondents.

Before: ALITO, SMITH, Circuit Judges and DUBOIS, District Judge.*

OPINION OF THE COURT

PER CURIAM:

### I.

As we write for the parties only, we do not set out the background of this case. This case presents issues that were soundly resolved in this Court's decision in *Dia v. Ashcroft*, 353 F.3d 228 (3d Cir.2003) (*en banc*). Cesar Lima–Gonzalez raises two issues on appeal. First, he challenges whether the Board of Immigration Appeals' ("BIA") order, which was an affirmance without opinion ("AWO") of the Immigration Judge's ("IJ") denial of his application for suspension of deportation, deprived him of an individualized determination of his case and thereby violated his right to due process.[1] Second, Lima–Gonzalez challenges whether the BIA's AWO was justified based on the factual issues involved in the IJ's suspension of his deportation claim. For essentially the reasons set forth in this Court's opinion in *Dia*, we will affirm.

### II.

As a matter of law and discretion, the IJ granted Lima–Gonzalez's application for voluntary departure through and including March 5, 2001, provided that he post bond in the sum of $500 with the Immigration and Naturalization Service ("INS") within five business days of the decision. The IJ emphasized that if Lima–Gonzalez did not comply with the terms of voluntary departure, he would forfeit that right, and an order of removal to Guatemala would immediately become effective. The BIA issued an AWO, effectively making the IJ's decision the final agency determination.[2]

### III.

Because the BIA affirmed the IJ's decision without a separate opinion, this Court reviews the IJ's decision for an abuse of discretion. 8 C.F.R. § 3.1(e)(4). This Court will affirm the IJ's finding that Lima–Gonzalez is ineligible for asylum if substantial evidence supports the conclusion that he failed to prove past persecution or a well-founded fear of persecution. *Abdulrahman v. Ashcroft*, 330 F.3d 587, 597 (3d Cir.2003) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992)). Therefore, reversal of the IJ's decision is proper only if the evidence permits but one reasonable conclusion and that is not the one reached by the Board. *Elias–Zacarias*, 502 U.S. at 481; *see also Abdille v. Ashcroft*, 242 F.3d 477, 483–84 (3d Cir.2001) (citation omitted); 8 U.S.C. § 1252(b)(4)(B) (providing that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").

### IV.

#### A.

Lima–Gonzalez correctly asserts that many federal courts, including this Court,

---

* Hon. Jan E. DuBois, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

1. The BIA's full affirmance reads: "The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(a)(7)."

2. "The Board member to whom a case is assigned shall affirm the decision of the Service or the immigration judge, without opinion, if the Board member determines that the result reached in the decision under review was correct [and] that any errors in the decision under review were harmless or nonmaterial ..." 8 C.F.R. § 3.1(e)(4).

have questioned whether the practice of issuing AWO's complies with the obligations of proper administrative appellate review and, equally important, whether it violates due process. However, conspicuously absent from Lima–Gonzalez's brief is any discussion of this Court's resolution of those questions in *Dia v. Ashcroft,* 353 F.3d 228 (3d Cir.2003) (*en banc* ). Without recounting the complete details of this Court's decision and rationale in *Dia,* it is at least certain that *Dia* established that the Attorney General permissibly construed the Immigration and Nationality Act ("INA") in promulgating streamlining regulations allowing AWO of IJ decisions; and, the INA says nothing about administrative appeal procedures. *Id.* at 236. Thus, such procedures remain within the Attorney General's discretion. *Id.; see also* Immigration and Nationality Act, 8 U.S.C. § 1101(a)(47)(B); 8 C.F.R. § 3.1(a)(7). As explained below, the record evidence was sufficient to support the IJ's findings, and Lima–Gonzalez's due process rights were not violated.

### B.

There is no record evidence to demonstrate that Lima–Gonzalez suffered persecution in the past on account of his actual or imputed political opinion when he lived in Guatemala. The facts surrounding the demonstrations in March 1996 indicate that several students, including Lima–Gonzalez, violated a reasonable request by police that they refrain from crossing a line drawn before the National palace. As a result, Lima–Gonzalez was among forty students who were arrested. The record indicates that the Guatemalan police did not beat Lima–Gonzalez while he was in custody. Rather, the beating he sustained occurred when he resisted arrest by the police during the demonstration. In fact, even while the police held him in custody for two days, they confined themselves to interrogating him. There is no record evidence that they beat or tortured him while he was in custody.

There is ample evidence that there was no continuing adverse personal interest in Lima–Gonzalez after his arrest in March 1996. Lima–Gonzalez was permitted to resume his studies at the university. There is no indication that the police ever arrested him again or mistreated him in any way. Evidence of no continuing adverse interest in an individual detracts from the contention that he has been the subject of persecution. *See Matter of D–L & A–M–,* 20 I. & N. Dec. 409, 1991 WL 353529 (B.I.A.1991). The lack of evidence of past persecution indicates that no rebuttable presumption of future persecution arises in this case. The question therefore becomes whether there is objective evidence to support Lima–Gonzalez's alleged subjective fear of future persecution due to his activities while a student in Guatemala.

The U.S. Department of State reported that, although it had seen no claims since the signing of the Peace Accord in Guatemala in March 1996, university student activists and faculty members in the past had claimed that a general climate of hostility existed against them on the part of the government. Guatemalan universities have often been centers of opposition to the government. However, there were no reports of *recent* efforts by the government to retaliate against student leaders in Guatemala.[3]

---

3. The IJ in this case carefully reviewed the objective evidence in the record. The Department of State had reported that the government in Guatemala generally respects human rights of its citizens in many areas. It also noted that, with the ending of the civil war in Guatemala, there has been an improvement in the country's human rights situation.

There is insufficient objective evidence to show that Lima–Gonzalez faces a reasonable possibility of future persecution on account of his actual or imputed political opinion arising from his participation in a student demonstration and in a student organization in 1996.[4] He is therefore not a "refugee" as defined by law. The IJ determined that Lima–Gonzalez could not meet the reasonable possibility standard required for asylum. It followed that he could not meet the more stringent requirement for withholding of removal.

## V.

For these reasons, we deny the petition for review.

Lima–Gonzalez correctly argues that the first 15 pages of the 1999 Country Report for Guatemala detailed many killings in Guatemala. However, there is no evidence to suggest that the government had been responsible for these killings or any killings of students in Guatemala.

There is lamentable history relating to the civil war in Guatemala, including government security forces targeting student leaders suspected of subversive activity. However, there have been many changes in Guatemala since the end of the civil war in 1996. The fact that there may be killings in Guatemala does not prove Lima–Gonzalez's contention that Guatemala's government has targeted for retaliation students who participated in demonstrations against the government.

4. The fact that Lima–Gonzalez was never arrested after March 1996 detracts from his contention that he remained a target of the security officials in Guatemala. In fact, after March 1996, other than contacts with security officials at checkpoints that affected all inhabitants of Guatemala, Lima–Gonzalez never again had any difficulties with the Guatemalan government or its officials.