**Heui Soo KIM, a/k/a Zhen Qian Guo, Petitioner,**

v.

**Alberto GONZALES, Attorney General,\* Respondent.**

**Docket No. 03–4788–AG.**

United States Court of Appeals, Second Circuit.

Argued: Feb. 14, 2006.

Decided: July 19, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for former Attorney General John Ashcroft as Respondent.

. David Z. Su, El Monte, CA, for Petitioner.

Neal Kirkpatrick, Assistant United States Attorney, Northern District of Oklahoma (David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, Loretta F. Radford, Assistant United States Attorney, of counsel), Tulsa, OK, for Respondent.

Before KEARSE and SACK, Circuit Judges, and STANCEU, Judge.**

SACK, Circuit Judge.

Zhen Qian Guo, also known as Heui Soo Kim, a native and citizen of the People's Republic of China, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial by an immigration judge ("IJ") of Guo's application for asylum and withholding of removal. Guo contends that the IJ's adverse credibility determination is not supported by substantial evidence. We agree, and therefore grant the petition.

## BACKGROUND

*Guo's First Asylym Application and First Asylum Hearing*

Zhen[1] Qian Guo, using a Korean passport with the name Heui Soo Kim, arrived in the United States in early 1992 and was promptly placed in exclusion proceedings[2] by the Immigration and Naturalization

---

** The Honorable Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

1. The government spells the first word in Guo's name as "Shen." We adopt the spelling used in the petitioner's brief.

2. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, 110 Stat. 3009–546, "realigned the vocabulary of immigration law, creating a new category of 'removal' proceedings that largely replaces what were formerly exclusion proceedings and deportation proceedings." Gerald L. Neuman, *Habeas Corpus, Executive Detention, and the*

Service.[3]  Subsequently, Guo filed an application for asylum and withholding of deportation in California.  This application is missing from the record.

At a March 25, 1992 hearing before an IJ, Guo testified through an interpreter, *inter alia,* that he had three children who remained in China with his wife, and that after the birth of his third child, Chinese authorities threatened to arrest him for violating the country's population control policies.  Guo also stated that the government fined him 10,000 yuan.  The IJ denied Guo's application for asylum and withholding of deportation, stating that Guo "submitted insufficient specific facts and/or evidence from which I might infer that he has been persecuted or that he has a well-founded fear of persecution on account of any of the specified grounds found in the [INA]." Oral Decision of the IJ, Mar. 25, 1992, at 4. Guo timely appealed to the BIA.

On October 23, 1992, the INS moved for termination of Guo's exclusion proceedings, stating that "[a]fter reviewing the record, the Service believes that the petitioner has raised a serious claim based upon the enforcement of the coercive family planning policy."  Mem. of Patricia A. Cole, Appellate Counsel, INS, dated Oct. 23, 1992, at 1. Subsequently, in a one-line per curiam order, the BIA terminated the proceedings.  *In re Guo,* A71–569–429, slip op. at 1 (BIA Nov. 3, 1992).

*Guo's Second and Third Asylum Applications*

In January 1993, Guo filed a second application for asylum and withholding of deportation.[4]  In this application, Guo alleged that: (1) he was forced by the Chinese government to pay a fine in connection with his wife's third pregnancy; (2) he was threatened with sterilization and arrest because he had violated the government's family planning policy; and (3) his wife "was coerced to be sterilized on December 1, 1989."  Request for Asylum, dated Dec. 27, 1992, at 3.

In September 1994, Guo filed a third application for asylum and withholding of deportation.  In this application, Guo alleged, *inter alia,* that his "wife was forced to medically undergo sterilization."  Request for Asylum, dated Sept. 19, 1994, at 2.

*Guo's Second Asylum Hearing*

In March 1997, for reasons that remain unclear, the INS once again placed Guo in exclusion proceedings.  A new hearing was held before an IJ in 1999, during which Guo testified through an interpreter, *inter alia,* that the government "used compulsory force" to sterilize his wife, with individuals coming to his home and "[t]earing [his] wife away."  Tr. of Asylum Hr'g, Mar. 9, 1999, at 28.[5]

Removal of Aliens, 98 Colum. L.Rev. 961, 966 (1998); *see also Mohammed v. Reno,* 309 F.3d 95, 96 (2d Cir.2002) (referring to the change in nomenclature).
*Evangelista v. Ashcroft,* 359 F.3d 145, 147 n. 1 (2d Cir.2004), *cert. denied,* 543 U.S. 1145, 125 S.Ct. 1293, 161 L.Ed.2d 105 (2005); *see also Fernandez–Vargas v. Gonzales,* —— U.S. ——, —— n. 1, 126 S.Ct. 2422, 2426 n. 1, 165 L.Ed.2d 323, —— n. 1 (2006).

**3.**  "[T]he then-Immigration and Naturalization Service ... has since ceased to exist as an independent agency, *see* Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat.

2135 (Nov. 25, 2002)...." *United States v. Ceballos,* 340 F.3d 115, 118 (2d Cir.2003).

**4.**  It is not clear to us why Guo filed a second asylum application then or why he filed a third asylum application in September 1994.

**5.**  The transcript of Guo's second asylum hearing is not dated.  The government states that the hearing was held on March 9, 1999, Gov't Br. at 7, which comports with the date given on the transcript of the IJ's oral decision rendered at the close of the hearing, *see* J.A. 30.

On direct examination, Guo's counsel asked him whether he had testified similarly in his 1992 hearing. Guo responded that:

I recall, at that time, I had been asked by the government official whether I had the third child—the fourth, fourth child or not, then I told them because being sterilized [sic] therefore we did not have fourth, fourth child.

*Id.* at 41. Later in the hearing, Guo's counsel asked Guo again whether he had testified about his wife's sterilization in 1992. Guo responded:

And I did not indicate about the sterilization. Only I recall when I were [sic] questioned they asked me do I have a fourth child, the birth of the fourth child, then I indicated no after the surgery, medical surgery, I was not—cannot have a fourth child.

*Id.* at 43.

Guo's counsel pressed him further, asking, "You did tell the Court through the interpreter at that hearing in March 1992, that your wife was sterilized . . . after the third child, and that she could not have a fourth one?" *Id.* at 45. Guo answered, "That's, that's correct." *Id.* Continuing, Guo's counsel asked, "[A]s you sit here now, did you or did you not testify your wife sterilization [sic] in that March 1992 hearing?" *Id.* at 46. Guo stated:

I, I did not mention that there were sterilization, but I only mentioned my wife had been—had received a certain kind of surgical procedure, and she was not able, able to give birth at the—another child.

*Id.*

In an oral decision, the IJ denied Guo's application for asylum and withholding of removal, finding "great difficulty with re-spect to [Guo]'s veracity." Oral Decision of the IJ, Mar. 9, 1999, at 5. Specifically, the IJ stated, *inter alia,* that: (1) Guo "did not testify in his hearing in 1992 that his wife had been sterilized"; (2) Guo "incorrectly identified the birth date" of his second child; and (3) Guo's explanation that he had not registered his third child with the government because he was waiting to pay the fine the government had imposed on him "defies logic" because Guo "was no longer hiding this child." *Id.* at 5–6. The IJ also stated that Guo's testimony generally was "evasive, unresponsive, and inconsistent." *Id.* at 8.

### The BIA's Decision

Guo appealed the IJ's decision to the BIA. In his brief on appeal to the BIA, Guo argued that the IJ's adverse credibility finding was unsupported by the record. Appeal Br. of Applicant, dated Aug. 30, 1999, at 5–7. In the alternative, Guo moved for a remand to the IJ to allow him to bring a claim for relief under the Convention Against Torture ("CAT").[6] *Id.* at 6–7.

On March 24, 2003, in a one-paragraph per curiam order, the BIA affirmed, without discussion, the March 1999 oral decision of the IJ, and denied Guo's request for a remand in order to add an application for CAT relief. *In re Kim,* A71–569–429, slip op. at 1 (BIA Mar. 24, 2003).

Guo petitions for review of the BIA's order. The sole issue he raises is whether the IJ's adverse credibility determination is supported by substantial evidence.

### DISCUSSION

#### I. Standard of Review

"When the BIA issues an opinion, 'the opinion becomes the basis for judicial re-

---

6. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85. *See also* 8 C.F.R. § 208.16(c) (implementing regulations).

view of the decision of which the alien is complaining.'" *Yan Chen v. Gonzales,* 417 F.3d 268, 271 (2d Cir.2005) (quoting *Niam v. Ashcroft,* 354 F.3d 652, 655 (7th Cir. 2004)). "Where the BIA adopts the decision of the IJ and merely supplements the IJ's decision, however, we review the decision of the IJ as supplemented by the BIA." *Id.; see also Secaida–Rosales v. INS,* 331 F.3d 297, 305 (2d Cir.2003).

■ We review the factual findings of the IJ, including adverse credibility determinations, for substantial evidence. *See id.* at 306–07. "Under this standard, the IJ's factual determinations may be overturned only if 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Diallo v. Gonzales,* 445 F.3d 624, 628 (2d Cir.2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).[7]

As we recently explained:

In general, we "afford particular deference in applying the substantial evidence standard" to credibility findings, *Zhou Yun Zhang v. INS,* 386 F.3d 66, 73–74 (2d Cir.2004) (internal quotation marks omitted), because "the IJ's ability to observe the witness's demeanor places her in the best position to evaluate whether apparent problems in the witness's testimony suggest a lack of credibility or, rather, can be attributed to an innocent cause such as difficulty understanding the question," *Jin Chen v. U.S. Dep't of Justice,* 426 F.3d 104, 113 (2d Cir.2005). But "the fact that the [agency] has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review."

*Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). For an adverse credibility determination to be upheld, the factfinder must provide "specific, cogent reasons" that "bear a legitimate nexus to the finding," *Surinder Singh v. BIA,* 438 F.3d 145, 147 (2d Cir.2006) (per curiam) (internal quotation marks and citation omitted), and that are not based on "flawed reasoning, bald speculation, or conjecture," *Xiao Ji Chen v. U.S. Dep't of Justice,* 434 F.3d 144, 158 (2d Cir.2006).

*Id.* at 628–29 (brackets in original).

II. The IJ's Decision

■ As noted, the IJ rested his adverse credibility finding on three specific grounds. First, he found that Guo "did not testify in his hearing in 1992 that his wife had been sterilized." Oral Decision of the IJ, Mar. 9, 1999, at 5. Second, the IJ found that Guo "incorrectly identified the birth date" of his second child. *Id.* at 5–6. Third, the IJ stated that Guo's explanation that he had not registered his third child with the government because he was waiting to pay the fine the government had imposed on him "defies logic" because Guo "was no longer hiding this child." *Id.* at 6. We will discuss grounds two and three first, and will then discuss the IJ's finding that Guo failed to testify about his wife's alleged sterilization in his 1992 hearing.

*A. Guo's Identification of His Second Child's Birth Date*

Guo contends that the IJ erred in relying upon a "minor inconsistency" with re-

7. Because Guo's exclusion proceedings were pending on April 1, 1997, and his order of removal became final after October 30, 1996, this case is governed by the transitional provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which were not codified in the United States Code. *See* Pub.L. No. 104–208, Div. C, 110 Stat. 3009, 3009–625 (Sept. 30, 1996); *Henderson v. INS,* 157 F.3d 106, 117 (2d Cir.1998), *cert. denied,* 526 U.S. 1004 (1999). We have recognized, however, that the standard of review set forth in IIRIRA, 8 U.S.C. § 1252(b)(4)(B), merely codified the substantial evidence standard we already applied. *Zhou Yun Zhang v. U.S. INS,* 386 F.3d 66, 73 n. 7 (2d Cir.2004).

spect to Guo's testimony about when his second child was born. Br. of Pet'r at 21–23.

Guo first testified on direct examination that his second child's birth date was April 10, 1987. Tr. of Asylum Hr'g, Mar. 9, 1999, at 25. Before being shown any documentation, Guo was asked if he was sure that April 10, 1987, was the correct date. Guo responded, "I especially know it's the month of April, but the date not as correct." *Id.* Guo's counsel then showed Guo a household registration book that indicated that the child was born on April 15, 1987, rather than April 10, 1987. *Id.* Guo was asked whether the former was the correct date. *Id.* He responded that it "must be 15." *Id.*

> The IJ stated:
> [Guo] did not know the birth date of his second child. He incorrectly identified the birth date. In fact, asked by his attorney, "Are you sure of that date?" he then began reading from the family record and concluded that it must be the date that is in the family record.

Oral Decision of the IJ, Mar. 9, 1999, at 5–6.

The IJ thus appeared to discredit Guo's testimony based on an answer as to a date in the Western calendar that was off by five days and was quickly corrected. In the context of Guo's testimony as a whole, this discrepancy is "minor ... and do[es] not concern material facts." *Diallo v. INS,* 232 F.3d 279, 288 (2d Cir.2000). It therefore does not provide a "cogent reason[]" for finding Guo incredible. *Diallo v. Gonzales,* 445 F.3d 624, 629 (2d Cir. 2006) (internal quotation marks and citation omitted). We therefore agree with Guo that any inconsistency in his testimony with respect to his second child's birth date was minor, and conclude that the IJ erred insofar as he appeared to give disproportionate weight to this inconsistency in evaluating Guo's credibility.

*B.  Guo's Explanation for the Failure to Register His Third Child*

At his 1992 hearing, Guo testified that he was not able to register his third child with the government. Tr. of Asylum Hr'g, Mar. 25, 1992, at 25. At his 1999 hearing, Guo's counsel asked Guo to confirm this earlier testimony. Tr. of Asylum Hr'g, Mar. 9, 1999, at 46. Guo responded, "Yes that I indicate in—if I want to be re-register I must pay the fine, before I pay the fine I was not able to register." *Id.* Based on this brief exchange, the IJ stated:

> [Guo] was asked why he did not have his third child entered on his family record. His response was this child was not registered because he was waiting to pay a fine. However, this defies logic because [Guo] was no longer hiding this child. The government officials clearly knew, assuming [Guo] is to be believed, of the birth of this third child, and therefore there was no reason for him not to have taken the steps necessary for registering this child.

Oral Decision of the IJ, Mar. 9, 1999, at 6.

The IJ's statement that Guo's explanation for why he had not registered his third child with the government "defies logic because [Guo] was no longer hiding this child" is without support in the record. As noted, Guo explained that he was not able to register his third child because he had not paid the fine that had been imposed on him. We find no testimony or documentation in the record—nor does the government, in its brief to us, point to any—suggesting that Guo's explanation was false or implausible. The IJ's analysis thus appears to have been "bald speculation." *Xiao Ji Chen,* 434 F.3d at 158. It therefore cannot support his adverse credibility determination.

### C. Guo's Testimony About His Wife's Alleged Sterilization

Guo contends that the IJ's finding that he failed to testify in 1992 about his wife's alleged forced sterilization is not supported by substantial evidence because the record of the 1992 hearing, "which is extremely confusing and incomplete, . . . indicates that [Guo] actually attempted to provide [such] testimony." Br. of Pet'r at 16. In particular, Guo asserts that he attempted to provide testimony about his wife's alleged sterilization, but the IJ at the 1992 hearing repeatedly "intervened" during his testimony or "stopped" him before he answered certain pertinent questions. *See id.* at 17–18.

There is some evidence in the record that supports Guo's position. During direct examination, after Guo testified that he had problems with Chinese authorities "[b]ecause of . . . of the birth control and the fact that I had a third child and they wanted to arrest me," Tr. of Asylum Hr'g, Mar. 25, 1992, at 25 (ellipsis in original), Guo's counsel asked:

> What I'm . . . what I'm trying to clear up for the . . . for everybody's understanding, were the Chinese authorities giving you trouble because you had a third child or were they giving you trouble because your wife. . . .

*Id.* at 25–26 (ellipses in original). Before Guo could answer, the IJ stated, "Well, I think that's what [he] said." *Id.* at 26. The IJ then summarized Guo's prior testimony as "indicat[ing] the Chinese authorities wanted to arrest him because he had a third child in violation of the birth control policy." *Id.* Guo was not given an opportunity to answer the question that his counsel had posed. The IJ also interrupted Guo or his counsel several more times

during direct examination, *see id.* at 27, 30–31, and Guo—who seemed to be attempting to understand what was being said through an interpreter—appeared to become increasingly confused, *see, e.g., id.* at 31 (IJ: "Sir, was your last response yes or no or what?" Guo: "Or what yes or no? No, no. What . . . what's the question?" (ellipsis in original)).

■ We are troubled by the IJ's repeated interruption of Guo and his counsel. We think it possible that the interruptions may have affected Guo's ability to present complete and cogent testimony.[8] Reviewing the hearing transcript as a whole, however, we cannot say that "any reasonable adjudicator would be compelled to conclude," *Diallo v. Gonzales,* 445 F.3d 624, 628 (2d Cir.2006) (internal quotation marks and citation omitted), that Guo attempted to testify that his wife had been forcibly sterilized. We therefore conclude that the IJ's finding in 1999 that Guo had not so testified at his first hearing is supported by substantial evidence.

That the IJ's finding in 1999 that Guo failed to testify at his 1992 hearing about his wife's alleged forced sterilization is supported by substantial evidence does not mean, however, that the IJ's adverse credibility determination in 1999 is necessarily supported by substantial evidence too. As an initial matter, we note that Guo was never asked at his 1992 hearing whether his wife had been forcibly sterilized, nor was he directly asked any other question the natural response to which would have been to tell the IJ what happened to his wife. We think it relevant in this regard that it was not until 1997 that the BIA recognized the forced sterilization of one's spouse as a valid ground for asylum. *See In re C–Y–Z–,* 21 I. & N. Dec. 915, 918

---

8. Guo's ability to present his testimony likely was also negatively affected by the fact that the lawyer he had chosen to represent him at his 1992 hearing apparently did not appear and instead sent a colleague in his place whom Guo had never met and with whom Guo had never spoken. *See* Tr. of Asylum Hr'g, Mar. 25, 1992, at 14–17.

(BIA 1997); *Shi Liang Lin v. U.S. Dep't of Justice*, 416 F.3d 184, 187–88 (2d Cir.2005). There is at least the possibility, therefore, that if Guo failed to testify about any such event, he did so because he focused his testimony on what had happened to him, not on what had happened to his wife.[9]

Notwithstanding the problematic nature of finding an asylum applicant incredible for failing to make allegations that would have been legally irrelevant if made, we recently concluded, in a similar context, that "it was not error or flawed reasoning for the IJ or BIA to ground their adverse credibility determinations on [the petitioner]'s failure to mention his wife's sterilization" in an application for asylum filed before 1997. *Cheng Tong Wang v. Gonzales*, 449 F.3d 451, 454 (2d Cir.2006) (per curiam). We stated that because "the basis for [the petitioner]'s original asylum claim [was] opposition to China's family planning program," the "omission was material to [the petitioner's] claim for asylum irrespective of whether it predated the 1997 change" in the law. *Id.* (emphasis omitted).[10] We therefore denied the petition for review. *Id.*

We think that the circumstances of this case require a different result. We do not read *Cheng Tong Wang* to establish a categorical rule that substantial evidence supports an adverse credibility finding in all cases where an applicant for asylum fails to allege, before the BIA's *In re C–Y–Z–* decision, that his spouse was forcibly sterilized, and then subsequently makes such an allegation. Rather, we emphasized in *Cheng Tong Wang* that the petitioner there had failed to mention his wife's alleged sterilization in his original asylum application, which asked the petitioner, *inter alia,* " 'whether he *or any member of [his] immediate family, [has] ever been mistreated by the authorities of [his] home country.*' " *Id.* at 453 (quoting BIA order) (third alteration added; emphasis in original). The petitioner had therefore, in effect, *denied* that his wife had ever been mistreated. Here, Guo's original asylum application is missing, so we have no way to determine whether Guo alleged in his original application for asylum that his wife had been forcibly sterilized. But in his January 1993 asylum application—filed long before the BIA's *In re C–Y–Z–* decision—Guo *did* allege that his wife had been forcibly sterilized in response to substantially the same question as that asked in *Cheng Tong Wang:* "Have you or any member of your family[ ] ever been mistreated/threatened by the authorities of your home country ... ?" Request for Asylum, dated Dec. 27, 1992, at 3.[11] If, as

---

9. The questions that Guo's lawyer asked him arguably appeared designed to elicit responses that focused only on Guo. *See* Tr. of Asylum Hr'g, Mar. 25, 1992, at 26 ("And what penalty did [the government] want to use against you?"); *id.* at 29 ("Did you know that you would get in trouble with the government when you had your third child?"); *id.* at 35 ("Other than arrest and the fine, did they threaten you with any other action?").

10. We also noted that although the BIA's adverse credibility determination "was based primarily on [the petitioner]'s failure to mention his wife's sterilization," 449 F.3d at 453, the IJ and the BIA had also relied on finding several other inconsistencies in the petitioner's story, *id.* at n. 2.

11. We also take notice of the fact that in October 1992, before Guo filed his second and third asylum applications, the INS stated that "[a]fter reviewing the record, the Service believes that [Guo] has raised a serious claim based upon the enforcement of the coercive family planning policy." Mem. of Patricia A. Cole, Appellate Counsel, INS, dated Oct. 23, 1992, at 1. Although by no means dispositive, the INS's statement that Guo "raised a serious claim" may well have been based on something Guo said in his original asylum application. Indeed, Guo's testimony that he was threatened with arrest and fined likely would not, without more, have sufficed to establish persecution in 1992. Cf. *Matter of D–L & A—M—*, 20 I. & N. Dec. 409, 413 (BIA 1991) (concluding that an applicant had not

was the case in his January 1993 asylum application, Guo stated in his original asylum application, in response to a specific question about whether members of his family had been mistreated, that his wife had been forcibly sterilized, it would hardly reflect poorly on his credibility that he did not reiterate this allegation at his 1992 hearing, during the course of which he was not asked a similar question, at a time when the allegation would have been legally irrelevant.

In light of the record as a whole, we conclude that the IJ's adverse credibility determination is not supported by substantial evidence. We therefore grant the petition and remand the case for a new hearing at which an IJ may evaluate Guo's claims without placing undue weight on an apparent inconsistency that cannot be properly evaluated on the current record.[12] We express no opinion on the ultimate merits of Guo's application for asylum and withholding or his credibility.

## CONCLUSION

For the foregoing reasons, the petition for review is granted, and the BIA's order affirming the denial of asylum and withholding of removal is vacated. The case is hereby remanded for further proceedings consistent with this opinion.

established persecution based on a "brief detention and interrogation" (citing *Zalega v. INS*, 916 F.2d 1257 (7th Cir.1990))).

**12.** On remand, the INS, now called U.S. Citizenship and Immigration Services, may well wish to search their files anew for Guo's original asylum application.